UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP LOPEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>SQUARE PAYROLL, INC.,<br><br>                    Defendant. | Case No.  25-cv-00648-AMO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING PROCEEDINGS**<br><br>Re: Dkt. No. 14 |

United States District Court<br>Northern District of California

This is a putative class action involving Defendant Square Payroll's alleged delay and withholding of wages.  Before the Court is Square Payroll's motion to compel arbitration.  Dkt. No. 14.  The motion is fully briefed and because it is suitable for decision without oral argument, the Court **VACATES** the September 11, 2025 motion hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-6.  Having carefully considered the parties' papers and the arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

## I.    BACKGROUND

On September 18, 2020, Plaintiff Phillip Lopez signed up for a Square point of sale account ("Seller Account").[1]  Declaration of Caleb Mennen ("Mennen Decl.") (Dkt. No. 14-1) ¶¶ 6-8.  To create this account, Lopez was required to enter an email address, create a password, and indicate the country in which he was located and in which he would use Square's services.  Mennen Decl. ¶ 6.  To create his account, Lopez had to click a box attesting "I agree to Square's

---

[1] Courts considering a motion to compel arbitration apply a standard similar to a motion for summary judgment, construing all facts and reasonable inferences in the light most favorable to the non-moving party.  *See Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

1   Terms, Privacy Policy, and E-Sign Consent."  Mennen Decl. ¶ 7.  Registration for an account

2   cannot be completed until a user clicks that box.  Mennen Decl. ¶ 8.  The word "Terms" was a

3   hyperlink, and when clicked, it linked to the General Terms of Service ("General TOS").  Mennen

4   Decl. ¶ 7.  Square Payroll presents the following representation of the webpage as it would have

5   appeared at the time Lopez saw it:

Let's create your account.

Signing up for Square is fast and free — no commitments or long-term contracts.

Enter your email                              Confirm your email

chart+7222020@squareup.com                    chart+7222020@squareup.com

Create a password                             Country

············                        Show     United States

☐ I agree to Square's **Terms, Privacy Policy**, and **E-Sign Consent.**

Already have a Square account? **Sign in.**          CONTINUE

15  Mennen Decl. ¶ 7.

16          The General TOS included a provision titled "Binding Individual Arbitration," which

17  provided that the user and Square agree to arbitrate any and all Disputes and that

18                  any arbitration under these general terms will only be on an
                    individual basis; class arbitrations, class actions, representative
19                  actions, and consolidation with other actions are not permitted.  You
                    waive any right to have your case decided by a jury and you waive
20                  any right to participate in a class action against Square.

21  Mennen Decl. Ex A § 21.  "Disputes" was defined as "any claim, controversy, or dispute between

22  you and Square, its processors, suppliers or licensors (or their respective affiliates, agents,

23  directors or employees), including any claims relating in any way to these Terms or the Services,

24  or any other aspect of our relationship."  Mennen Decl. Ex A § 20.  Square Payroll is an affiliate

25  of Square.  Van Brunt Decl. ¶ 2.  Lopez created the Seller Account to see if he might want to use

26  Square payment services for his construction business, but never used the account again after

27  initially creating it.  Declaration of Phillip Lopez ("Lopez Decl.") (Dkt. No. 15-1) ¶ 4.

28          On March 26, 2022, Lopez created a Square Payroll team member account ("Payroll

2

United States District Court
Northern District of California

Account") linked to his employer, Secured Venue Safety Management.  Declaration of Scott Van Brunt ("Van Brunt Decl.") (Dkt. No. 14-2) ¶¶ 6-7.  Lopez's employer began the registration process by providing Lopez's name and email address to Square Payroll.  Van Brunt Decl. ¶ 6. Square Payroll then emailed Lopez an invitation with a link to "Accept Invitation."  *Id.*  To create his Payroll Account, Lopez followed the link, which directed him to a "Setup Your Account" page, on which Lopez entered his personal information.  Van Brunt Decl. ¶ 8.  *Id.*  At the bottom of that page was the following disclosure: "By continuing, you agree to the terms of service and privacy notice."  *Id.*  "Terms of service" was a hyperlink indicated by its blue text and linked to the Square Team TOS.  *Id.*  Lopez could not have created his Square Payroll account without completing this page and clicking the "Next" button.  Van Brunt Decl. ¶¶ 8-9.  Square Payroll presents the following representation of the page as it would have appeared when Lopez saw it:

United States District Court
Northern District of California

1    Van Brunt Decl. ¶ 8.

2         The Square Team Terms of Service ("Square Team TOS") includes a section titled

3    "Binding Arbitration" that requires that "any and all Disputes" be arbitrated, and requires that such

4    arbitration proceed solely on an individual basis:

> You and Square agree that any and all Disputes, except those that
> are resolved informally or brought in a small claims court, will be
> arbitrated by a neutral arbitrator who has the power to award the
> same individual damages and individual relief that a court can. ANY
> ARBITRATION UNDER THIS AGREEMENT WILL ONLY BE
> ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS, CLASS
> ACTIONS, REPRESENTATIVE ACTIONS, AND
> CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT
> PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR
> CASE DECIDED BY A JURY AND YOU WAIVE ANY RIGHT
> TO PARTICIPATE IN A CLASS ACTION AGAINST SQUARE.

11   Van Brunt Decl., Ex. A at § 24.  "Disputes" is defined in the Square Team TOS as

> any claim, controversy, or dispute between you and Square, its
> processors, suppliers or licensors (or their respective affiliates,
> agents, directors or employees), whether arising before or during the
> effective period of these Terms, and including any claim,
> controversy, or dispute based on any conduct of you or Square that
> occurred before the effective date of these Terms, including any
> claims relating in any way to these Terms or the Services, or any
> other aspect of our relationship.

17   *Id.* at § 23.  Both the General TOS and Square Team TOS include an identical delegation

18   provision stating that "the Arbitrator shall be responsible for determining all threshold arbitrability

19   issues, including issues relating to whether the General Terms and/or Additional Terms (or any

20   aspect thereof) are enforceable, unconscionable or illusory and any defense to arbitration,

21   including waiver, delay, laches, or estoppel."  Mennen Decl. Ex. A § 21 (General TOS); Van

22   Brunt Decl. Ex. A § 24 (Square Team TOS).

23        Lopez filed the instant action in Alameda County Superior Court on December 12, 2024,

24   asserting a negligence claim and violations of the Consumer Legal Remedies Act, California's

25   Unfair Competition Act, and the Electronic Funds Transfer Act related to Square Payroll's alleged

26   delay and withholding of payments.  Dkt. No. 1-1 at 5.  Square Payroll removed the case on

27   January 16, 2025, Dkt. No. 1, and filed the instant motion on March 26, 2025, seeking to compel

28   arbitration, strike class claims, and stay proceedings.  Dkt. No. 14.  Lopez's opposition followed

1   on April 9, 2025, Dkt. No. 15, and Square Payroll replied on April 16, 2025, Dkt. No. 16.

2   **II.    DISCUSSION**

3        Square Payroll moves to compel arbitration on the basis that both the General TOS and

4   Square Team TOS require arbitration of Lopez's claims.  *See* Dkt. No. 14.  The Federal

5   Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a

6   transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such

7   grounds as exist at law or in equity for the revocation of any contract."  *AT&T Mobility LLC v.*

8   *Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2).  The FAA reflects a "liberal federal

9   policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,

10  25 (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1,

11  24 (1983)).  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district

12  court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

13  issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*,

14  470 U.S. 213, 218 (1985) (emphasis in original).

15       "A purported arbitration agreement presents a few 'gateway' issues: First, whether an

16  agreement to arbitrate was actually formed.  Second, whether that agreement is 'valid,' in other

17  words, whether there are any defenses.  Third, 'whether the agreement encompasses the dispute at

18  issue.' "  *Davenport v. Nvidia Corp.*, 719 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024) (internal

19  citations and quotation marks omitted).  Typically, these gateway issues are resolved by a court,

20  but some, including validity and arbitrability, can be delegated to an arbitrator by agreement.

21  *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634 (9th Cir. 2021) (citing *Green Tree Fin.*

22  *Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).  Accordingly, "when presented with a contract that

23  includes both an arbitration provision and a delegation provision, a reviewing court must first

24  'resolve any challenge that an agreement to arbitrate was never formed.' "  *Tanner v. Tax Servs. of*

25  *Am., Inc.*, No. 25-CV-01940-DMR, 2025 WL 1580737, at *3 (N.D. Cal. June 4, 2025) (quoting

26  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022)).  If the reviewing court

27  finds an agreement to arbitrate was formed, it must then "resolve any challenge directed

28  specifically to the enforceability of the delegation clause."  *Caremark*, 43 F.4th at 1030.  "Finally,

United States District Court
Northern District of California

if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id.* Accordingly, the Court first considers whether an agreement to arbitrate was formed when Lopez created his Seller Account or Payroll Account. The Court then considers the enforceability of the delegation clause.

### A. Formation of Agreement to Arbitrate

Square Payroll argues that in creating both his Seller Account in 2020 and his Payroll Account in 2022, Lopez entered into a valid and enforceable agreement to arbitrate any dispute with Square Payroll, including the instant action. Lopez argues that no valid arbitration agreement exists because he did not agree to the arbitration provision when he created either account and, accordingly, there was no mutual assent. "[M]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)). A party's conduct may manifest assent, but only if they "intend[] to engage in the conduct and know[] or ha[ve] reason to know that the other party may infer from [their] conduct that [they] assent." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted). The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014).

Because Lopez created those accounts online, the Court must examine his conduct in creating the accounts. Courts view online agreements as falling on a spectrum between "clickwrap" and "browsewrap." *Berman*, 30 F.4th at 856. A clickwrap agreement is one in which "website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use," while a browsewrap agreement is one where the "website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. Courts routinely find agreements falling closer to the clickwrap end of the spectrum to be enforceable because the consumer has received notice of the terms being offered and "knows or has reason to know that the other party may infer from his

conduct that he assents" to those terms.  *Berman*, 30 F.4th at 856.  However, courts are "more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms."  *Id.*  A "modified clickwrap agreement" or "sign-in agreement" exists where a user is "notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service."  *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4-5 (N.D. Cal. July 25, 2023) (finding that a modified clickwrap agreement demonstrated mutual assent to arbitrate).

Here, when creating a Seller Account in 2020, Lopez was presented with a clickwrap agreement, as he was required to check a box directly next to the phrase "I agree to Square's Terms, Privacy Policy, and E-Sign Consent."  Mennen Decl. ¶ 7.  In contrast, when creating his Payroll Account in 2022, Lopez was presented with a page that included the following disclosure: "By continuing, you agree to the terms of service and privacy notice."  Van Brunt Decl. ¶ 8.  In this way, the Payroll Account registration is "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else – click ["Next"] – to assent to the hyperlinked terms."  *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (citation omitted).  Thus, the agreement is most like a "modified clickwrap agreement" or "sign-in wrap" because the Payroll Account setup page screen informs users that if they click the "Next" button, they agree to the Square Team TOS.

To determine whether Lopez entered into an agreement when creating either account, the Court considers whether "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Burman*, 30 F.4th at 856).  As for the Seller Account, the website provided reasonably conspicuous notice of the terms to which Lopez would be bound.  The hyperlink is "conspicuously distinguished from the

1   surrounding text in bright blue font, making its presence readily apparent." *Id.* at 516.  And by

2   checking the box next to the disclosure, Lopez manifested his assent to the General TOS.[2]  *See id.*

3       Having found the Seller Account signup page gave conspicuous notice of the terms of use,

4   the Court next considers whether Lopez unambiguously manifested assent to the General TOS

5   when creating his Seller Account, *Oberstein*, 60 F.4th at 517, and easily finds that he did.  "A

6   user's click of a button can be construed as an unambiguous manifestation of assent only if the

7   user is explicitly advised that the act of clicking will constitute assent to the terms and conditions

8   of an agreement." *Berman*, 30 F.4th at 857.  Lopez does not contest that in creating his Seller

9   Account he clicked the box indicating he "agree[d] to Square's Terms, Privacy Policy, and E-Sign

10  Consent."  As such, there is no reasonable dispute that Lopez assented to the General TOS.

11      Lopez's arguments do not persuade otherwise.  He argues that due to his "minimal

12  interaction" with the Seller Account and the fact that he had "no awareness that arbitration terms

13  would extend to separate payroll services created nearly two years later," there is no basis for

14  extending those arbitration terms to his payroll-related claims.  Opp. at 5, 13-14.  He contends he

15  had no reason to suspect, and was never informed, that any arbitration terms associated with the

16  Seller Account could govern unrelated services, such as those relating to future payroll records.

17  *Id.*  This argument challenges the conscionability – and thus enforceability – of the agreement, not

18  whether an agreement was formed in the first place.  Lopez points to no authority that any

19  expectation he had regarding the scope of the agreement is relevant to the Court's analysis

20  regarding whether an agreement was formed.[3]  Lopez also points to the provision in the Square

21  _____

22  [2] Because the Court finds Lopez manifested his assent to the General TOS, it need not determine
    whether he also manifested his assent to the Square Team TOS.  However, due to the distance

23  between the terms of use disclosure and the button users are required to click to complete the
    account registration process, the Court is skeptical that the page gave users conspicuous notice of

24  the Square Team TOS.  *See, e.g.*, *Schlueter-Beckner v. SimpliSafe, Inc.*, No. 3:25-CV-01764
    (CRB), 2025 WL 2162948, at *4 (N.D. Cal. July 30, 2025) (finding no conspicuous notice in part

25  where the disclosure was placed "off to the side" and "not directly above or below" the button).

26  [3] Lopez argues that courts regularly decline to compel arbitration where the plaintiff had no clear
    notice or reasonable expectation that the arbitration terms agreed upon in one context would

27  extend to other contexts involving distinct and separate services.  While Lopez's expectations may
    be relevant to the arbitration agreement's enforceability – an analysis the Court does not reach, *see*

28  Section B below – they are not relevant to the Court's determination as to whether a valid
    arbitration agreement exists, and *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099 (D. Ariz. 2014)

United States District Court
Northern District of California

Team TOS indicating that "[i]n the event of a conflict between this Agreement and any other Square agreement or policy, this Agreement shall prevail on the subject matter of this Agreement," and argues that this provision "plainly invalidates Square Payroll's contention that the arbitration provision from the Seller [A]ccount can apply to payroll-related disputes governed by the distinct and controlling terms of the [Square Team TOS]." *Id.* at 15. But because the General TOS and Square Team TOS both require arbitration, there is no conflict between them, and Lopez has identified none. Finally, Lopez argues the arbitration provisions associated with the Seller Account must be narrowly construed with ambiguities resolved strictly against the drafter, Opp. at 15-16 (citing *Victoria v. Superior Court*, 40 Cal.3d 734, 739 (1985); *Sandquist v. Lebo Auto., Inc.*, 1 Cal.5th 233, 247-48 (2016)), but identifies no ambiguity in the arbitration provisions that the Court should construe in his favor.

The Court therefore concludes that an agreement to arbitrate was made upon Lopez's creation of his Seller Account, as the webpage gave conspicuous notice of the terms of use to which Lopez assented by checking the box and completing his account registration.

### B. Delegation Clause

Square Payroll argues the parties have agreed to delegate questions of arbitrability to the arbitrator, so the arbitrator – not this Court – must resolve disputes relating to the interpretation or enforceability of the agreement. Mot. at 19-21. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the General TOS unambiguously delegate to the arbitrator "all threshold arbitrability issues, including issues relating to whether the General Terms and/or Additional Terms (or any aspect thereof) are enforceable, unconscionable or illusory and any defense to

---

– the one case cited by Lopez – does not hold otherwise. *See Longnecker*, 23 F. Supp. 3d at 1109 (compelling the matter to arbitration having found valid arbitration agreements existed between the parties, and despite noting that an arbitration agreement within a contract of adhesion is unenforceable where it does not fall within the reasonable expectations of the weaker party, because plaintiffs had made "no reasonable expectation argument").

arbitration, including waiver, delay, laches, or estoppel." Mennen Decl. Ex. A § 21. Courts regularly find arbitration agreements containing similar delegation clauses constitute clear and unmistakable evidence of an intent to delegate. *See, e.g.*, *Cordero v. Coinbase, Inc.*, No. 3:25-CV-04024-CRB, 2025 WL 2223495, at *2 (N.D. Cal. Aug. 5, 2025) (finding delegation provision constituted clear and unmistakable evidence of parties' intent where arbitration agreement granted arbitrator the "exclusive authority to resolve any Dispute, including . . . disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement"); *see also Tanner v. Tax Servs. of Am., Inc.*, No. 25-CV-01940-DMR, 2025 WL 1580737, at *4 (N.D. Cal. June 4, 2025). Lopez's only argument against the Court's enforcement of the delegation clause is that he did not assent to any arbitration terms, and therefore did not assent to agree to delegate issues of arbitrability to the arbitrator. The Court has already concluded that Lopez agreed to the General TOS. Accordingly, the Court finds there is clear and unmistakable evidence that the parties' agreement delegates threshold arbitrability questions to the arbitrator.

## III.    CONCLUSION

In sum, the Court finds that when Lopez created his Seller Account, the parties formed an agreement to arbitrate containing an enforceable delegation provision. Accordingly, the parties' remaining arguments regarding the enforceability of the arbitration agreement, including those related to the class action waivers, are left to the arbitrator to decide in the first instance. *See Caremark*, 43 F.4th at 1030. Square Payroll's motion to compel arbitration is therefore **GRANTED**. Accordingly, its request for a stay pending arbitration, Dkt. No. 14 at 26, is **GRANTED** as well. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration,

//

//

//

//

§ 3 of the FAA compels the court to stay the proceeding.").  Square Payroll **SHALL** file a status report regarding arbitration on December 4, 2025 and every 90 days thereafter, and within 14 days of the completion of arbitration.

**IT IS SO ORDERED.**

Dated: September 5, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**